IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES W. BOND, | |
| Plaintiff, | |
| v. | Case No. 22-cv-1700-NJR |
| JACKSON COUNTY, | |
| Defendant. | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff James W. Bond, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Sheridan Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Bond's original Complaint was dismissed for failure to state a claim (Docs. 8, 14). In the Amended Complaint (Doc. 15), Bond alleges numerous constitutional violations by officials in Jackson County, Illinois.[1]

This case is now before the Court for preliminary review of the Amended Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon

---

[1] Bond later submitted additional exhibits to accompany his Amended Complaint (Doc. 16).

1

which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Amended Complaint

Bond's original Complaint alleged that Jackson County, Jackson County Sheriff's Office, Judge Bloodsworth [sic], the State's Attorney Office, and the City of Murphysboro, Illinois, Police Department violated his constitutional rights by issuing a false arrest warrant (Doc. 14, pp. 2-3). The Court dismissed the Complaint because Bond sued individuals who were immune from suit and because his remaining claims failed to state a viable claim (*Id*. at pp. 2-4). Bond was granted leave to amend his Complaint.

On June 30, 2023, Bond filed an Amended Complaint against Jackson County. In the Amended Complaint (Doc. 15), Bond alleges that he is suing Jackson County because it issued an arrest warrant for an escape from custody after Bond left his residential rehab facility (Doc. 15, p. 2). Bond alleges that he was previously only charged with a felony and not convicted; thus, he did not meet the criteria for the crime of escape from custody when the warrant was issued (*Id*.). The warrant was later dismissed because the presiding judge determined that Bond did not fit the criteria for escape, although Bond was in custody 120 days before the dismissal (*Id*. at p. 3). Bond alleges that he also experienced an illegal search and seizure. His property was searched during the illegal arrest, drugs were recovered, and he was charged and convicted of drug possession. Bond maintains that because the arrest warrant was improper, the drugs seized during his arrest should not have been used against him (*Id*. at p. 2). Despite the charge of escape being dropped,

Bond contends that the charge was placed on his IDOC intake form, resulting in a higher security classification (*Id.* at p. 4).

Bond alleges that Jackson County violated his Fourth Amendment rights by illegally searching and seizing his drugs. He further contends that Jackson County violated his Eighth Amendment rights by holding him on an excessive bail amount of $150,000.00 (*Id.* at p. 2). He also raises claims under the Fourteenth Amendment for violation of his equal protection rights for the issuance of the warrant based on his "escape" (*Id.* at p. 3). Bond also alleges that Jackson County failed to properly train its employees (*Id.*). He further alleges a malicious prosecution claim (*Id.* at p. 5).

## Discussion

Simply put, Bond again fails to state a claim. Bond now alleges that Jackson County improperly issued an arrest warrant, illegally seized his drugs, and improperly charged and convicted him of drug possession. He also alleges that he was held on excessive bail and that his equal protection rights were violated, although he fails to explain how those rights were implicated by the warrant for his arrest. Although Bond previously sued the attorney and judge who issued the warrant for his arrest, Bond now seeks to hold the county responsible for all of his alleged constitutional violations. But the municipality cannot be liable for the actions of its officials because there is no *respondeat superior* liability in Section 1983 cases. *Flores v. City of South Bend*, 997 F.3d 725, 731 (7th Cir. 2021). Jackson County can only be liable if the county caused the constitutional violation; the constitutional violation had to have occurred due to a county policy or practice. *See Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690, 694 (1978).

Bond points to only one policy or practice of the county which he believed led to his improper arrest. Bond's Amended Complaint alleges that Jackson County failed to properly train staff "adequately on grounds that Jackson County District Attorneys falsely put out an arrest warrant for [Bond's] arrest." (Doc. 15, p. 3). Although not entirely clear, it appears that Bond believes his arrest was the result of improper training, although it is not clear what training or lack thereof led to his improper arrest. A municipal liability claim can proceed for failure to train, "when a municipality adheres to a training program 'that they know or should know has failed to prevent tortious conduct by employees,' thereby demonstrating deliberate indifference to this known risk." *Flores*, 997 F.3d at 731 (quoting *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 407 (1997)). A plaintiff is not required to offer proof of wide-spread violations; a single violation can be enough to state a claim if the plaintiff shows that it is a "recurring, obvious risk." *Flores*, 997 F.3d at 731-32. *See also Connick v. Thompson*, 563 U.S. 51, 64 (2011) ("The Court sought not to foreclose the possibility, however rare, that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under [Section] 1983 without proof of a pre-existing pattern of violations.").

Although Bond maintains that the county's failure to train led to various constitutional violations, he offers only conclusory statements in support of his claim. He does not allege what training officials should have received and how the failure to train led to his improper arrest. Further, even if he did identify the training that the county failed to provide to employees, Bond fails to allege that the failure amounted to deliberate

4

indifference. He fails to allege a pattern of constitutional deprivations or a single deprivation that was likely to reoccur due to the lack of training. Thus, Bond fails to state a claim for failure to train. Further, to the extent he lists a number of constitutional violations he believes were violated during the course of his arrest and detainment, Bond fails to tie any of those actions to a policy or widespread practice of Jackson County. Similarly, Bond states only in conclusory fashion that his arrest and detention prior to the charges being dismissed violated various constitutional rights. Thus, he again fails to state a claim and his Amended Complaint is subject to dismissal. This is Bond's second attempt at stating viable claims. He failed to do so. The Court finds that any additional amendment would be futile.

Accordingly, the Amended Complaint, along with this action, will be **DISMISSED with prejudice**. *See Agnew v. NCAA*, 683 F.3d 328, 347 (7th Cir. 2012); *McCree v. Grissom*, 657 F.3d 623, 624 (7th Cir. 2011); *Garcia v. City of Chicago, Ill.*, 24 F.3d 966, 970 (7th Cir. 1994).

## Disposition

For the reasons stated above, Bond's Amended Complaint is **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted. This shall count as a "strike" for purposes of 28 U.S.C. 1915(g).

If Bond wishes to appeal this Order, he must file a notice of appeal with this Court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(1)(A). If Bond does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal. *See* Fed. R. App. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*,

547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien*, 133 F.3d at 467. He must list each of the issues he intends to appeal in the notice of appeal and his motion for leave to appeal *in forma pauperis*. *See* Fed. R. App. P. 24(a)(1)(C). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. Fed. R. App. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of judgment, and this 28-day deadline cannot be extended.

The Clerk of Court is **DIRECTED** to close this case and enter judgment accordingly.

**IT IS SO ORDERED.**

DATED:  July 24, 2023

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**